Case number 22-30 for United States of America v. Naquel Henderson, a felon. Ms. Batty for the appellant. Mr. Cahill for the appellate. Good morning. Good morning. May it please the Court. Mr. Abbati on behalf of Naquel Henderson. I'd like to reserve two minutes for rebuttal, please. Just days before the Supreme Court decided Rehaef, Mr. Henderson pled guilty to being a felon in possession. Rehaef clarified the government's burden to prove an additional knowledge of status element in felon in possession cases. But no one told Mr. Henderson that. Not the court, not the prosecutor, not even his defense counsel. As a result, Mr. Henderson gave up his right to trial despite not knowing that his predicate conviction, which resulted in a six-month suspended prison sentence under the D.C. Youth Act, was a crime punishable by over a year's imprisonment. The core issue with this case is whether Mr. Henderson has shown a reasonable probability that he would have gone to trial had he known of the knowledge of status element. That answer is yes. This case involves at least six of the elements, the circumstances that Greer, Rehaef, and numerous other cases have cited to illustrate when a defendant has made an adequate showing of ignorance of status. Specifically, Mr. Henderson... Counsel, can I ask you a question? I'm a little puzzled about why your client wants to withdraw his guilty plea in this case. Because my understanding is he got a concurrent sentence of three years, which he has served. He's on supervised release. So if you win this appeal, he has to go to trial, not just on the federal charge, but also the Superior Court charge. He could get an aggregate sentence that's greater, so have to go back to prison. And he could get a consecutive sentence before he got a concurrent one. So I'm just unclear as to why he would want to risk that. Correct, Your Honor. He would have to go and go to trial in both cases. That is correct. Your Honor, Mr. Henderson wants to go to trial. He's absolutely clear about that. He wants the government to its burden. In both cases. He's willing to risk consecutive sentences. That is correct. That is correct. And, you know, as it stands, these convictions are criminal history points on his record. And he wants these counts. He's willing to risk that for an acquittal. That's correct. So this case involves six circumstances that set it apart from the typical defendant in Greer and from all the other rehafe defendants. Yes. Go ahead. Your brief seems to really address this rehafe defense that he wants to put on. He can't put that on in the Superior Court case. So we would be pursuing that rehafe defense in that case. And the government, I think, concedes that it is agreeing to jury instructions on that burden. But the Superior Court offense is the one that has a mandatory three-year minimum. That's correct. Which they didn't file papers on. He kind of lucked out in this case. And they could now file those papers. Right. And he doesn't have this additional defense that you want to pursue in the federal case. So it just seems to me that that is a factor in us considering whether he actually would have wanted to withdraw that plea and go to trial, knowing about rehafe. He would still have to go to trial without a rehafe defense on the Superior Court charge, which has a mandatory minimum. Right. And should that be a factor that the court is considering? I mean, that would be a reason to kick this back for an evidentiary hearing if there were questions as to whether Mr. Henderson would, in fact, want to take that risk. That's not what the district court found, however. But he didn't want to take that risk when he accepted the plea offer because when there was no rehafe defense. Right. Because there was no. Right. But he wanted to plead guilty, which seems to indicate that he didn't think he had, I guess, any other kind of defense, such as, for example, I didn't possess a gun. That was not something he wanted to pursue. Right. Now there's this rehafe issue, but he still can't pursue that in the Superior Court charge. Right. He thinks he can pursue that in the D.C. Superior Court as well. And he is willing to do that. The DCCA hasn't adopted rehafe. That's correct. And Atkins, it did not expressly adapt that, and it said it was willing to hold that as a. It hasn't adopted rehafe. No, it has not explicitly done that, but it hasn't not adapted it either. And as the government shows in its brief, the government is agreeing to jury instructions encompassing that burden. So Mr. Henderson is very clear that he would like to go to trial. And again, should that be a question for this court, an evidentiary hearing would be appropriate to consider that. We don't think that the record. And what would he say in an evidentiary hearing? Like, why would he want to, I guess, risk these consecutive sentences and the mandatory minimum? Right. So in other cases. Right. In other cases, an evidentiary hearing has illuminated, you know, whether a defendant would like to take these types of risks. But here there were not as many risks. I mean, even even if you were to get a consecutive sentence, we're talking about, you know, three years. He's already served three years, potentially, you know, 18 to 24 months on the federal sentence. That's not a whole lot of time for him. Where on the flip side, he could get acquittal. And so that's the kind of calculus that he that he had here. It's not this is not a case where, for example, he had charges dismissed. You know, that's that was the case, I believe, in in in rural or who are you go, for example, where the court did kick it back for an evidentiary hearing. In those cases, the defendant had charges dismissed. There was an act. There was an actual question of fact as to whether they would have risked potentially multiple additional years in prison, 10 years, I believe, in Puerto Rico and and additional charges. And there was a question of whether there would be enough evidence to convict on those on those dismissed charges. Here, there's nothing like that. Again, the the the acceptance of responsibility points were two points. The difference of six months in the guidelines. He is willing to take that risk. He's already served those three years. I mean, we're talking about 18 to 24 months, you know, or 12 to 18 months on the federal side. And that's something he's willing to risk, so to speak, for the potential acquittal, because he believes he did not have the mens rea for for a 922 conviction. So that's what he's that's what he's hoping to achieve with with trial. What's what's his theory for why he threw away the gun when being pursued? If he didn't have the mens rea to know he was illegally possessing. Yeah, I have not had that. I have not had that conversation with him. And he he he says that he, you know, did not he did not know he had the gun. And that's that that's all he's told me. And he did not have a status about your conversations with him. But just you as his counsel, what do you think would be the best argument at trial that he lacked the mens rea to know he was illegally possessing the gun when he threw away the gun? So the question is not whether he was illegally possessing it. It's whether he had the stats right. Did he know he his defense is that he did not know that he was convicted of a crime punishable reason he might have been illegally possessing the gun. Well, again, the rehab defense is whether he knew he was of the status that he that he was convicted of a crime punishable by over a year's imprisonment. And that is his defense. I understand that. And it is possible that maybe he was violating two laws by possessing this gun. And he was not aware of the felon in possession violation. He was aware of some other crime he was violating. Right. That's that's the only scenario I can think of where you would that where it would make sense that he threw the gun away absent the mens rea knowledge that he was a felon in possession. I mean, there's all sorts of reasons why he may have thrown the gun away. Like what? He thought he wasn't supposed to have a gun in generally speaking. Right. In general. You know, or I thought I committed a crime. I don't want to be apprehended by the police, you know, throw the gun away. We see the time was evidence of crime of like, I don't know. I don't know. But the point is, here, the defense that he's going to put on is the rehab defense. And which is, you know, absence of mens rea. My next question is, you know, it's not your fault that the facts are the facts are. So I don't mean it to be a hostile question, but he, I think, was arrested for being a felon in possession twice. Right. For this federal. That's correct. Rest. Do you have a number in mind of how many times someone would have to be arrested as a felon in possession before they knew they were? I think you have to look at the facts as a whole here. Right. So here we do not just have to say was arrested 20 times for being a felon in possession. Right. At that point, he would have no good defense that he didn't know he was a felon. Sure. I think what about 19? Sure. Sure. I think I think that's very plausible here. Here we have two, one of which is dismissed. We also have we also have Mr. Henderson, who is 18 years old, had diagnosed learning disabilities, had a youth act sentence, walked away at sentencing with not a day to spend in prison, a six month prison sentence and a year probation. Yes, I understand the facts and I appreciate your vigorous advocacy in the facts. I noticed learning disability. I also noticed that he had been admitted to college. Certainly, lots of people excel in college, overcoming learning disabilities. So they're obviously not in conflict to the extent that this is in the record. Can you give us a sense of. You know how how easily he understands things that that most people understand. Right. And the district court here called these learning disabilities severe, said they impacted his his high school as well as his everyday life. That's a record. The PSR notes to IEPs that were from 2005 and 2010, and they both indicate that he has some type of seems like dyslexia. He has difficulty processing written information and and also processing oral information. So it seems like this is these learning disabilities. And it also says that he needed specialized instruction 20 to 60 percent of the time. And that's from the IEP. That's what we have in the record. So, again, clearly these learning disabilities impacted. Again, this is what the district court said his everyday life and made it very hard. And those the district court's words. So certainly there's at least at least reasonable doubt that he did not understand, did not have the knowledge, did not take away that he was convicted of a crime punishable by over a year simply by reading the plea documents or. So listening to it when he entered his plea. Right. Had a colloquy with him where the judge told him what the maximum was. Correct. And it was striking to me that in this plea colloquy, the judge said, you look confused. Are you confused about that? And he said, no. Right. I'll just note, even though it's not on the record, that judge was Neal Kravitz. Right. Who I appeared before as a USA and who was my colleague when I was in Superior Court. That is a very careful judge when he does his plea. Yeah. And. I mean, it's not on the record, but Judge Kravitz was satisfied that he was not confused. Right. I mean, so I think just as plausibly as, you know, you could read that as evidence of knowledge, you could easily read that as evidence of confusion. When in light of the in light of the fact that he was, again, 18 years old at the time. First adult conviction. I know that his attorney was seeking Youth Act treatment. And, you know, again, he was he was he had these learning disabilities. But I guess what I'm asking you about is the transcript in which he's told what the maximum is. Correct. Judge Kravitz says, oh, you look confused. Are you confused? He says no. Right. And again, Kravitz moves on. Right. Judge Kravitz. That seems to be a very clear statement by him that he understood. I mean, I would submit this, which was three years, which is more than one. Right. And I would submit that that simple answer, no, might might just as plausibly be considered to be considered to be, you know, I don't you know, I'm scared. I'm 18. I'm in this setting. I don't want to say I'm confused. But if you read again, consider that the circumstances taken together, the statement you look confused is also pretty profound. The fact that Mr. that Judge Kravitz noted that Mr. Henderson was confused and then proceeded about it. And he said, no, I'm right. Exactly. But then did not proceed to further, for example, explain, you know, re explain the sentence in layman's terms again. And you said Judge Kravitz is very careful judge. Clearly, he is. I mean, we can see that in the sentencing transcript where he went out of his way to discuss rehabilitation. The entire sentencing transcript was about Youth Act treatment. And even if even if Mr. Henderson was somehow, you know, had the knowledge at the plea colloquy. Question is whether he had the knowledge at the time of the offense. And certainly by the time he walked out of sentencing with. And to take a step back from it. Yeah. You would propose to argue to a jury that no doesn't mean no in the context of this plea. I mean, that's what I guess in terms of what we're trying to do here is try to figure out if you really would have wanted to take this to trial. But your argument is you wanted to go before a jury and say, although he was charged twice by being a felon possession, a person having a conviction that carries more than a year's punishment is what he's charged with twice. And then when he was actually pleading guilty to the felony, he was asked, are you confused about this maximum sentence? He said no. And you want to take this to a jury and ask them to find that he didn't understand he was a felon. So here are a task is reasonable probability of reasonable doubt. That colloquy is one example, one one circumstance among, like I said, six or seven that that Greer, Rehafe and other cases found to be an adequate showing of ignorance of status. That colloquy at least shows that he was confused at one point, even if somehow he wasn't confused when he came out of that colloquy. By the time he left sentencing with with an actual sentence, I think that colloquy says he looked confused. He was asked if he was confused and he said no. I don't think that colloquy shows that he actually was confused because he said he wasn't confused. I mean, you could you could plausibly think that and a reasonable juror could also possibly think, you know, an 18 year old kid with learning disabilities whose attorney has been talking about Youth Act treatment, who's already received a juvenile adjudication, knows what that is. First time in the adult system says he's not confused, maybe because he's scared and, you know, the judge doesn't further explain it. But even if you thought that he was, he did have that knowledge by the time he left sentencing with a sentence that was six months suspended, a year of probation and never had to serve a day, it's at least plausible that he did not have the knowledge when he walked out of sentencing. And then, you know, three years pass. We have this offense. Again, plausibility, a plausible Rehafe defense. That's what we have to show. If if we were. If we were to agree with you, do you think that. It would be rare for a defendant to succeed. With the Rehafe defense, you know, post, you know, imagine that the conviction sentencing happened before Rehafe and then it's either appealed or it's not preserved, but appealed or comes up on ineffective assistance. Do you think that in other words, if if your client were to win, do you think it would be rare that clients win? I think it would be. I mean, this is what we call. So this is like that unicorn case that was foreshadowed in Greer. You know, Greer said there's there's the typical defendant felon knows he's a felon, but then also said that there are circumstances in which that might not be the case and cited, you know, string side of from the transcript. This case has six or seven of those circumstances. In this case, this is that again, that unicorn case, that rare case that was foreshadowed in Greer. And again, you know, we have actual confusion. We have his local D.C. youth juvenile offender status conviction, limited cognitive abilities. He's 18 years old at the time. He never said never sentenced to a year in prison, served no time on that original offense. And then we have three years that elapsed. I mean, that's why we said this case is on all fours with Usman. None of the cases that the government cites from Reynoso, Wallace, Payne, Guardado, none of them have have any mitigating circumstances like this. And they all have previous convictions. Thank you. I appreciate that. Just before you leave, make sure to pay any more questions. Judge Rogers. No, I'm OK. Thank you very much. Thank you. Mr. Kaye. Yes, Your Honor. May it please the court. Timothy Cahill for the United States. I'd like to begin by addressing appellants, D.C. felon and possession cases and the significance they have in showing his knowledge of the status as a felon. Appellants tried to minimize those by suggesting that they were merely arrests. But the record in this case shows that those proceedings involved far more than just arrests. I would point the record to a 234 to 36 and a 241 to 45, which show that these both occurred within months of his sentencing for attempted robbery. Well, he was actually still on supervision for his attempted robbery conviction. In these cases, he had a person he had presentments in both cases where he was appointed counsel. He was expressly charged in open court with having previous with having been possessed a firearm after having previously been convicted of a crime punishable by imprisonment for a term exceeding one year. After both presentments, he was detained in D.C. jail. He had preliminary hearings in both of those cases represented by counsel. We had an opportunity to challenge whether there was probable cause that he was a felon in possession in those cases. During those proceedings, he did not challenge his felon status. And after one of the hearings, he was placed on high intensity supervision. After one, he was detained in D.C. jail. He was arraigned. He had bond review hearings. He had numerous status hearings, including five status hearings that occurred while he was being held in D.C. jail on a probation revocation. During the course of those proceedings, his counsel challenged his bond conditions, sought numerous continuances to engage in plea negotiations about whether he might plead guilty to being a felon in possession. Never once challenged the premise of these charges, which is that he was a felon. Given that all of this occurred before he committed the 922-G1 offense in this case, it shows that he would have had no viable rehave defense had he proceeded to trial. He could not plausibly claim he was unaware of his status as a felon, particularly because if he had proceeded to trial, it would have opened the door for the government to introduce evidence of this extensive criminal history, including the proceedings involving these two other felon in possession cases, to rebut the suggestion that he didn't have knowledge of his status as a felon. He would have been going to trial on a felon in possession charge, where the government would have been free to introduce evidence of two other commissions of being a felon in possession. Do you know if the government agreed with the district court's, the federal district court's sentence here? Or did the district court give a lighter sentence than the government recommended? In the instant case, in the district court case, this actually, I believe, was ultimately what the government was proposing in connection with the plea agreement. The government asked for a concurrent sentence aggregate of three years, which was what was given as a result of the global plea, which encompassed the other DC felon in possession charge. I also wanted to address the appellant's reliance on his learning disabilities in this case to support his claim. Appellant has identified two diagnoses of learning disabilities in the pre-sentence report, and I want to focus on both the timing of those diagnoses and the nature of what the disabilities actually were. The PSR shows that the more significant diagnoses occurred when the appellant was only eight years old, and the types of things that identified were difficulty with counting, with telling time, with rhyming words, with letter blends, with self-control. I don't want to minimize the difficulties that might pose for someone going through an education, but none of them suggest the sort of severe cognitive impairment that appellant has alleged here, especially given that at the age of 15, when appellant was diagnosed as still having some learning disabilities, it noted that his reading comprehension had significantly improved, and his remaining issues were things like reversing B's and D's in difficulty reading. By the time he was 18 years old, the Superior Court sentencing transcript shows that he was on track to graduate, that he had been admitted to college. It discussed the fact that he had originally been doing well in school. It noted that he had had a recent downturn in his grades, but his counsel attributed those to family issues and marijuana usage. There was no indication from appellant or his counsel that these learning disabilities were preventing him from doing well at school by the time he was 18 years old, let alone any showing that he had the sort of mental capacity issues that would make him unable to understand the clear and unambiguous language from the Superior Court judge telling him what the maximum sentence was, let alone all of the indications of his status as a felon through the two DC felon and possession cases that I just discussed. I would note that this is a far cry from the world case in the Ninth Circuit that appellant relies on, where the court did find there was a plausible rehave defense, where the appellant had presented medical evidence that he had was, quote, irreversible brain damage, with specific evidence that evidence that was causing him to have major memory lapses, combined with the contemporaneous evidence that he had been willing to go to trial and had in fact rejected a plea. Here, all of the indications are the opposite of that. This case is more like something like the pain case we cited from the Seventh Circuit, where the court noted that although the defendant in that case had been a special education student, and in fact had been diagnosed with a bipolar disorder, neither of those factors, while of course they may have caused great difficulties in his life, neither of them could be tied to an inability to understand or remember his status as a felon. Particularly in this case, again, when the record shows that there were repeated reminders, even after the exchange that was discussed during appellant's argument about Judge Kravitz asking him if there was anything about the maximum possible sentence he was not aware of or was confused about, and he said no, that wasn't the end of the matter. Later in that same plea hearing, the judge again reiterated that he was being convicted of what was a felony offense in the District of Columbia. At the sentencing hearing, there was again a reminder that the maximum sentence, even under the D.C. guidelines, let alone the statutory maximum, but even under the D.C. guidelines that the sentence could have been up to 24 months of incarceration. And then, again, subsequent to all of that were the two cases with the D.C. felon in possession charges with numerous court hearings where he was aware that he was being charged on the basis that he was a felon, that he had a felony, that that was his status. Let me ask you a question that I don't know that either of us have the expertise to feel confident in our answer to, but I am curious. I think if you just asked average person in the street, is murder a felony, they would say yes. And if you asked, is jaywalking a felony, they would say no. What do you think they would say about attempted robbery? I agree, Your Honor, that that falls in between those two examples. I think that's self-evident. I would really hesitate to suggest an answer, especially because I think it's difficult. I would admit to place myself in the position of a lay person. But I don't really think that's the issue. I agree that in those two extreme examples, Your Honor, that might hold some sway. But I think the key point here, and as I think the First Circuit mentioned, I don't have right in front of me the name of the case. I think it was in Guardado, yes, in the Guardado case. The First Circuit actually discussed whether or not there was something peculiar in the state law crimes at issue in that case, where the state law used different terminology about felonies, misdemeanors, or even other terms that were not necessarily consistent with the federal definitions of those terms. And they emphasized there that the terminology actually isn't even what's the key. The key here, in fact, how it's defined in the federal FIP statute, is not with the word felony. It's whether or not the offense was punishable by more than one year in prison. And here there is ample evidence that this defendant was repeatedly advised and repeatedly confirmed his understanding that attempted robbery was punishable by three years in prison and then was, in the D.C. FIP cases, regardless of whether it was the word felony, was advised that he had the sort of felon status that prohibited him from owning a firearm. And he was, in fact, being charged with having committed the crime. And in those cases, again, it wasn't even just the word felony. He was charged expressly at those presentments with having illegally possessed a firearm after having been convicted of a crime punishable by imprisonment for a term exceeding one year. And throughout many, many court hearings, represented by counsel, with an opportunity to get himself out of detainment, multiple stretches of detainment, including one that was five months in D.C. jail, by challenging whether there was probable cause for those crimes, he never contested the premise that he was a felon, that he had been convicted of a crime punishable by a term of imprisonment exceeding one year. There are no further questions. For all of those reasons, we would ask that the judgment of the district court be affirmed in this case. If you would, let me check. Judge Pan and Judge Rogers, any questions? No, thank you. Thank you. Thank you, Your Honor. Ms. Boddy, maybe two minutes. Yes. Just a few points here on the learning disabilities. You know, obviously we have the IEPs from when he was very young. So when when government's counsel talks about letter blends, of course, that's appropriate for. An eight year old. But we know that from from the record that we have, he was running about three grades behind. And the question is, are those learning disabilities something that could create reasonable doubt here? We submit yes. And even the court in Guadalajara highlighted that, you know, distinguished Guadalajara from Guzman on the basis of learning disabilities and found those to be significant. Graduate from high school and be admitted to college if you're three years behind. Three years behind in terms of his development. Yes, sure. Sure. And again, if the district has an academic, I'm sorry, academic development. Yeah, absolutely. I think so. I mean, he had to he had to get the grades, get the transcript. But you could absolutely be. And if that was a factual question. Sorry. Go ahead. I mean, just I think what you're saying is we high schools would routinely hand out graduation diplomas to people with a ninth grade education. If he was behind developmentally in terms of this processing, you know, he could still get he could still take off the check marks that he needed to get into college. And again, this is we don't know what college this was, but it was a generic statement by Judge Kravitz that he was admitted to college. Again, if this was if this was an issue of fact, then we should have an evidentiary hearing about it. But the district court not even allow hearing. And again, I would point to twenty to fifty five B here. That which states that a hearing is appropriate unless the record conclusively establishes. And here we do not have, you know, conclusively, you know, the record does not conclusively establish that there is no plausible rehave defense. And then finally, on the on the fifths, again, those were brought in conjunction with other charges. And at bottom, you know, Mr. Mr. Henderson is entitled to submit both good facts and bad facts to the to the to the jury. Never got that opportunity because of the ineffective assistance of his trial counsel. So with that, we act. We asked the court to reverse the district court and allow Mr. Henderson to withdraw. Thank you very much.
judges: Walker, Pan, Rogers